Case number 19-4146 Walter Himmelreich v. Federal Bureau of Prisons et al. Oral argument is not to be received. 15 minutes per side. Mr. Byron for the appellant. You may proceed. Thank you, Your Honor. May it please the Court, Thomas Byron from the Department of Justice, here on behalf of the defendant, Janelle Fitzgerald, a captain in the Bureau of Prisons. I'd like to reserve five minutes for rebuttal, if I may, please. This Court should hold, as the third, fourth, and fifth circuits have recently held, that special factors preclude extension of the Bivens individual damages remedy to a First Amendment retaliation claim against prison officials for housing assignments. That question implicates fundamental separation of powers concerns, as the Supreme Court has reiterated in Abbasi. Before turning to those special factors, however, I'd like to address the jurisdictional question which the plaintiff has raised here. The District Court's denial of the motion to dismiss on special factors grounds is a collateral order immediately appealable, just as a qualified immunity order would be. Is there a case that has held that? Judge Moore, the question presented here has never previously been addressed by a court, and that question is whether, absent any qualified immunity argument, a court can hear on an interlocutory appeal a special factors question. Well, we have ruled in many, many other contexts that collateral orders such as this one could not be appealed. What makes this special? Judge Gibbons, several things do. First of all, the Supreme Court, in cases including Iqbal and Wilkie, have recently articulated that this question, the special factors issue, among others, in addition to qualified immunity itself, the fundamental question about clearly established law, that is, can be addressed by the Supreme Court and the courts of appeals in an interlocutory appeal. But those are cases where there was a basis under the collateral order doctrine, apart from this issue. Judge Moore, you're correct that those were cases in which a qualified immunity argument had been raised, but the courts didn't depend for their jurisdiction on the presence of that. And the reason we know that, Judge Moore, is because the Swint Pendant Appellate Jurisdiction Standard, whether the issues are intertwined, was not the basis for the courts to proceed to the separate question, whether that separate question was the or the special factors issues, as in Wilkie. And the courts in those cases emphasized that the special factors issue is both antecedent to and implicated by the qualified immunity issues, but it's not the presence of qualified immunity that conferred jurisdiction. Instead, the court made clear that the courts on interlocutory... Well, you said made clear, made explicit, do you mean? You don't, do you? I think, Judge Gibbons, that the reasoning of the courts is clear in this respect, and we explained that in our brief. And let me just go through the factors in the Cohen collateral order standard and explain why we think that, in addition to the similarity to qualified immunity, this question satisfies the Cohen collateral order standard. So first of all, Cohen requires that the district court must have conclusively determined the question. And here, the special factors issue, that is to say, whether under the separation of powers analysis, a court can create a new cause of action. That question is conclusively determined by the denial of the motion to dismiss in this context on special factors grounds. And the second question is whether it resolves an important issue. The courting will against Halleck made clear that separation of powers concerns are an important question that can be and should be recognized on interlocutory appeal. And third, the question is whether the issue is effectively unreviewable after trial. And because these concerns, these separation of powers concerns that the court identified in Abbasi, like qualified immunity concerns, implicate burdens on government officials and governmental operations and chilling effect on future decision-making. Those questions do require resolution at an early stage and cannot be effectively reviewed after judgment. And I'll turn to two examples of this in the Supreme Court that the plaintiff relies on, but that actually support our argument for interlocutory jurisdiction here under Cohen and the collateral order doctrine. The first is Johnson against Jones. And the Supreme Court there emphasized that it would balance the considerations and look to both sets of considerations about whether interlocutory appeal is warranted. And the concerns that it identified in Johnson against Jones about fact-like inquiries or fact issues on the other side of the law fact divide are not present here. So it would not take courts an excessive amount of time or effort to identify and resolve these separation of powers concerns, nor would it require re-evaluation on a different record after final judgment if the case were to proceed to trial. Similarly, the court in Johnson against Jones emphasized that even if there were any doubt about the separability concern, that there was a reason to assume, as the court did there, that the separability concern was diminished, the requirement was diminished in the context of Bivens cases. And so too here, if there were any doubt, and we think there's not, because the separability of the question about whether the courts have the authority to create a new cause of action in the absence of congressional action is quite different from the question whether a defendant actually harmed the plaintiff's constitutional rights. So, but if there were any doubt, the court made clear there, and then reiterated in Iqbal, by the way, that the co- and collateral order requirements have exceeded what the court there called their internal logic. And especially in the Bivens context, it appeared the court was referring to. So in this context, the court has made clear, I think, Judge Gibbons, in its reasoning, that these concerns are appropriate for early resolution. Would that apply any time that a district court allowed a constitutional claim or a statutory claim against the U.S. to go forward? No, Judge Moore, I'm sorry, it would not. And here's why. The special factors concerns identified by the court in Abbasi and Wilkie and other cases are unique separation of powers constitutional issues that are present in Bivens cases, where the courts have acted in the absence of congressional legislation to create a new cause of action, wholly divorced from any statutory basis. And so that's a unique situation that a well-bounded, narrow, discrete category of orders that the court can address in an interlocutory posture and that need not extend, the reasoning need not extend to other kinds of orders, Judge Moore. I would like to turn briefly to the special factors because I think there are some important considerations that are worth mentioning. First of all, the Third Circuit in Bistrian, the Fourth Circuit in Earl, the Fifth Circuit in Butler have all recently concluded that special factors preclude the extension of a Bivens remedy to the very kind of claim made here. That is, a First Amendment retaliation claim by a prisoner against a prison official for a housing decision. And in fact, in all three of those cases, I believe, the question was whether the assignment to a special housing unit was in retaliation for a grievance. And the courts in all three of those cases emphasized that special factors preclude the extension, the creation of a new Bivens remedy in that context. We're talking about it in a, shall I say, highly pejorative way, calling it a housing decision. It was a decision to send him to the SHU, which is an isolation type of situation. And according to his complaint, it was an explicit, an explicit statement was made by Fitzgerald that she was sending him there because of his trying to file a grievance. So what kind of remedy would there be for someone such as Himmelreich? What remedy do you think is available to him here? Judge Moore, there are several remedies. First, the administrative remedy procedure under the Durham Prison's regulatory framework is available to prisoners generally and to Himmelreich himself. I thought that we had said that he did not have that available to him, that he did not even need to exhaust his prison remedies. Judge Moore, it's true that this court in a previous appeal held that under the PLRA exhaustion requirement, that it was effectively unavailable. That doesn't mean, however, that as a category of a special factor in cases like this, that the court should disregard the separation of powers concerns. My question was what remedy does he have? Well, Judge Moore, if I may- The answer, he has no remedy. I mean- No, Judge Moore, I don't think that's right. He has an injunctive remedy at a minimum, but he also has a remedy under the administrative remedy procedure. And the reason this court didn't address that entirely, as we explained in our opening brief, is that the administrative remedy procedure includes the opportunity to go around the local prison officials, around the warden. And I see my time's expired, and I hope I'll have a few minutes for rebuttal, Your Honor, but just to make that clear. But wholly apart from that, the injunctive relief that the court in Abbasi emphasized is available as well. And so, too, but it's also worth emphasizing, if I may, Judge Moore, that the Congress and the courts have repeatedly emphasized the discretion afforded to prison officials in the context of prison particular kind of housing assignment that he's singled out. But the housing assignments in general, including assignments to the SHU, are within the discretion of prison officials for good reason, as the courts have recognized. That discretion means that there may not, in fact, be a remedy for a particular individual in a particular circumstance, but the special factors counsel hesitation before creating a new judicial damages. Judge Moore, I wonder if I might ask one quick question? Sure. You haven't addressed the filing fee issue. I understand that Captain Fitzgerald has not paid this filing fee and has been sued, of course, in her individual capacity. Would you address why she should not be required to file the fee? Certainly, Judge Cole. And let me say first, we've laid out several arguments in our brief and rest on those. I want to emphasize at the outset, though, that institutionally, the Justice Department Civil Division has represented Bivens defendants since the creation of the Bivens remedy, and that we are not aware of any instance in which an individual federal official has been required to pay the fee, and certainly not any instance where the Justice Department representing the individual federal official has had to address this question. So this is a novel question, Judge Cole, and it's one that I think the historical practice of the courts demonstrates is clearly treats individual claims against federal officials in their individual capacity in the same way as claims against those very same officials in their are well supported, that it would make no sense to require the Justice Department, which has several considerations that we take into account in representing, deciding to represent, and representing an individual federal official in a Bivens case. And it would, those considerations address the very concerns that the plaintiff here has identified. Things like, you know, make sure that the appeal is significant, that it's not frivolous, etc. The Solicitor General, after all, has to authorize an appeal where the Justice Department represents an individual federal official, and those considerations are amply supported by the SGA's determination. Is there any case that has held that the federal official who sued in her individual capacity does not need to pay a filing fee? No, Judge Moore, as I said, we're not aware this question has ever arisen before. Either way. So there's no case on point either way. Either way, exactly, Judge Moore. And I do think it's important to look at the analogy to the question before the federal rules of health procedure were amended several years ago, that rule four, for example, to... I think you've used your time and I think we should move on and let your opponent have a chance to make his argument. Thank you. Thank you. Thank you, Judge Moore, and may it please the court. Benjamin Aguinalda on behalf of Mr. Himmelreich. If I could, I'll just pick up where the court left off on the filing fee issue. I agree with my friend that I don't think there's a reported case out there that addresses this issue, but I do disagree with my friend on the other side with regard to what the practice is in the lower courts. So I just pulled a few cases from Ms. Fitzgerald's opening brief and reply brief to see where the Bivens defendant was topside taking an appeal, whether they were in fact required to pay the filing fee and whether they actually did pay it. And I can give you the district court sites for just four of those cases. One is this court's decision in Jacobs versus Alem, which is district court ECF sites 149 and 151. That was a case where they were required to pay the filing fee and they did. The three others, one is Swartz versus Rodriguez, which is in the reply brief. That's ECF 59. The second is Vanderklok versus United States. That's a third circuit decision cited in all briefs and that's ECF 98. And then the third is Bistream versus Levy, also cited in all briefs, and that's ECF 242 to 251. So the idea that Bivens defendants aren't required to pay filing fees when they take appeals respectfully is just not true. There is a follow-on issue, which I think by duty of candor requires me to relate to the court, which is I called counsel in the Jacobs, Vanderklok, and Bistream cases to understand and confirm whether they paid the filing fee. And they confirmed they did, but they also confirmed that their situations were a little bit In the Jacobs case, when the Bivens defendants, when that litigation began, the Bivens defendants sought the Department of Justice's representation in the case. DOJ denied representation. And so when they paid the appellate filing fee, that came out of their own pocket. The case was a little bit different in Bistream and Vanderklok, where counsel tells me that their representation in those cases was pursuant to a contract with the Department of Justice under the same regulation that you case. Pursuant to that contract, they represented the Bivens defendants in those cases. And when they paid the appellate filing fee, they tell me that DOJ then reimbursed their payment of the filing fee. So in practice, at least in those cases, DOJ has in effect paid a filing fee for Bivens defendants. Now that's all apart from the plain text of Federal Rule of Appellate Procedure 3, which says the appellant has to pay the filing fee. And with respect to my friend's attempted distinction at representation of the department being a big factor here, I don't think that holds up. Because I think it's common knowledge that on the merits of Bivens cases, if there is a damages judgment at the end of the litigation, it's very, very rare, if not completely unheard of, for the Bivens defendant actually to pay the judgment. It's usually the department that filed that or the United States that pays the judgment. And so that doesn't collapse the whole Bivens personal capacity framework reasoning. And if that's true on the merits, I don't know why the similar distinction would hold up in this context where we're talking about the filing fee. If the department chooses to pay the filing fee on behalf of Ms. Fitzgerald, obviously we have no qualms with that. And the department's more than willing and able if they want to do that. But I don't think that changes the fact that this obligation is a personal one. It runs against the appellant. And the appellant here is Ms. Fitzgerald, who was sued in her individual capacity. If I could, I'll reverse track back to the jurisdictional question that Judge Moore and Judge Bivens were asking about. And I think to assert jurisdiction over this appeal, the court would have to take two extraordinary steps. First, it would have to say that the Supreme Court's careful emphasis on qualified immunity in footnote four of Wilkie was completely unnecessary because the court already had independent jurisdiction to decide whether a Bivens remedy exists. And second, the court would have to ignore pages 353 and 354 of Will, where the Supreme Court said that abbreviating litigation troublesome to Bivens defendants does not justify collateral review. And I want to start with footnote four of Wilkie because that's, of course, a case where almost this exact question was presented, whether there is interlocutory appellate jurisdiction to decide whether a Bivens remedy exists. And our position in this case was one that was squarely before the Supreme Court in Wilkie. If you look at pages 32 and 33 of the respondent's brief in Wilkie, they argued that, quite obviously, the question whether there is a Bivens remedy doesn't itself fall within the plain language of the plain, you know, practical understandings of the collateral order doctrine. And that's why the Department of Justice and the respondents in that case argued over whether you could extend Hartman's directly implicated by standard to the question whether a Bivens remedy exists. And so it was against that backdrop where you have footnote four and you have the court saying, well, the question whether a cause of action exists under Bivens is directly implicated by the qualified immunity defense. And I think you have to read that footnote in context of what the facts were before the case, before the court. You had an appeal from a denial of qualified immunity. And I think that fact is emphasized in the paragraph that Ms. Fitzgerald highlights in Iqbal, where the court did refer to the Bivens question as in a certain category of appealable issues. And it's really interesting the way the court framed that paragraph, because the very first sentence says, in Hartman, we in Wilkie, in the next sentence, we considered an appeal from a denial of qualified immunity. And so I think when you arrive at this description of the Bivens question is falling within a category of appealable issues. What the court is saying is that this directly implicated by standard is effectively functioning as a sort of pendant appellate jurisdiction. If an appellate court has jurisdiction on appeal from a denial of qualified immunity, then the next question is, well, what other issues that are somewhat related to that issue can the court also decide on appeal? And interestingly, that was the exact argument that the Department of Justice made in Wilkie. That's how they framed it. They used, their papers used the words inextricably intertwined, which does come from the Swent case and is the standard test for pendant appellate jurisdiction. But they didn't cite Swent. They said inextricably intertwined and then cited Hartman. And I think that's exactly the right understanding, which is when you're thinking about the Bivens context in cases like Wilkie or in cases, you know, unlike this one where there is a denial of qualified immunity, you're really asking, is the Bivens question implicated by the qualified immunity defense that is before the court? Do you know of any case where either a court of appeals or the Supreme Court has said that the Bivens question is independently appealable under the collateral order doctrine? In other words, where there is not an appeal of a denial of qualified immunity. I don't, Your Honor. And I take my friend's 28-G letter from last week to say that they find that notable. I think it's equally notable that Ms. Fitzgerald doesn't have a case going the other way, saying there is jurisdiction to decide that question on interlocutory appeal where you don't have a live qualified immunity defense. I will say there is one case that comes about as close as you can to rejecting her position without actually saying that, and that's Vanderklag versus United States, the Third Circuit's decision. As we said in our appellee brief, I think the discussion that the Third Circuit lays out in that opinion is really telling because it draws a distinction. It says we have jurisdiction to decide the Bivens question because there was a qualified immunity ruling on that issue. The court then went on to reject jurisdiction over a related issue, and it said we don't have jurisdiction to decide that issue because there was no qualified immunity ruling as to that issue. I don't think you can read Vanderklag to say that the court would have still considered the Bivens question even if there were no denial of qualified immunity. And so I think that's about as close as you can get to rejecting her position without actually saying it. And, Your Honor, candidly, I think the easy explanation for why there are no cases going one way or the other on this issue as Ms. Fitzgerald, and we have framed it, is that everybody understands footnote four of Wilkie to say what it says, which is qualified immunity, a denial of qualified immunity is the anchor for appellate jurisdiction. And that's how you get the Bivens question in the door. And so I think at its core, the basic defect in Ms. Fitzgerald's position is that she's rendering footnote four of Wilkie useless. As I say, if she's right, then there was no need for the court to think about how qualified immunity related to the Bivens question in Wilkie. And separate and apart from that, I think it's important to keep in mind the damage that her position would do to what the court said in Will v. Halleck. Because remember, that was a case where the court said, sure, you could argue that allowing litigation against Bivens defendants to go forward will force them to stand trial, will force them to incur the ordinary costs of litigation. And so you could say that at that level of generality, that maybe that does warrant collateral order review. The court rejected that position. And even today, I don't quite understand any of Ms. Fitzgerald's responses to that problem. My friend on the other side says, well, Will talked about separation of powers and said that that could justify collateral order review. But it's important to look at how Will used the phrase separation of powers. When it referred to separation of powers, it was referring back to a citation to Nixon versus Fitzgerald, which of course, involved President Nixon's claim of absolute immunity. And the court said in that context, there are compelling reasons to allow the immediate review, immediate appellate review of a question involving absolute immunity and the President of the United States. I mean, I think that's a quintessential case where separation of powers concerns are at their peak. It wasn't referring to separation of powers in this kind of general way that Ms. Fitzgerald's using it. And I do think to understand the practical consequences of her position illustrates the damage that she's doing to Will, because at its core, her position is, well, any order that allows a Bivens action to proceed in a new context should be immediately appealable. But, you know, after Abbasi, virtually every case that raises a Bivens claim arises in a new context unless it's virtually identical to the actual claims in Bivens, Davis, and Carlson. So what we're talking about here is really any case that raises a Bivens claim that is not virtually identical to Bivens, Carlson, and Davis. And then beyond that, I mean, I think the attempted limiting principle that I see in the reply brief, the only one she says, well, maybe this language in Will has work to do where you have a Bivens defendant who moves to dismiss based on limitations grounds, that that's not exactly a case where the order allows a Bivens action to proceed in a new context. And so maybe that order wouldn't be immediately appealable. With all due respect, that's just an unrealistic hypothetical. After Abbasi, no Bivens defendant is going to move to dismiss just on limitations grounds. They're also going to move to dismiss based on the lack of a Bivens remedy as Ms. Fitzgerald did in this case. And so if the court accepts her argument on the Bivens ground or on the limitations ground, the case is over. There's no need for them to appeal that order. If the court rejects her position on limitations grounds and rejects her position on the Bivens grounds, then under her position in this case, that order is entirely immediately appealable. So if you could, you've only got a few minutes left. If you could get to the merits issue, if we were to reach the merits, why is, is this not a case that under Abbasi should be considered to be inappropriate for Bivens under the special factors analysis? Sure. Your honor, for many reasons laid out in the appellee brief, I think the most straightforward one is that this is literally a case like Bivens. As Justice Harligan put it in his concurrence in Bivens, this is a case where it is damages for nothing. Judge Moore, your question was what remedies does he have in this case? I mean, one of the first responses I heard was injunctive relief. They never raised that argument below, and it's hard to see how that's a plausible argument given that he's out of the shoe. He has no standing to pursue an appeal. The prison grievance process, your honor, I think is another reason that makes this case particularly special, which is below Ms. Fitzgerald did not dispute that the grievance process was not available to him. She says, as she says here, is it just doesn't matter. So long as the grievance process is generally available to prisoners across the country in federal prisons, that that with all due respect, that's just not reconcilable with what the court said in Abbasi itself. The court reproduced Justice Harlan's concurrence that said that Bivens was designed for cases where it is damages for nothing. That's exactly this case. I mean, this court held in 2014 that there was a fact issue about whether he was intimidated out of using the prison grievance process. It makes no sense to say so long as a process is generally available, that forecloses a Bivens for this plaintiff, even though the reason this plaintiff didn't have access to the remedy was because the defendant intimidated him out of using it. With all due respect, I don't understand that line of argument. And I'll just make one more quick general observation, your honors, is that if you take Ms. Fitzgerald's arguments on the PLRA, on Turner versus Safley, or even this argument on the prison grievance process, if you take them on their own terms, the logical conclusion of those arguments is that there is no viable prisoner of Bivens claim after Abbasi. The PLRA argument does not rest at all on a distinction between the types of claims before a given court. And so, you know, that's a perfectly reasonable position to take. But I think if she's going to take it, she should own up to the practical consequences of the position. So your opponent has argued at various times during this argument and in the briefs about separation of powers concerns. Can you address that? Certainly, your honor. I think the core separation of powers concern that Abbasi recognized was a court creating and enforcing a cause of action outside of the legislative process ordained in the constitution. I think that's the core separation of power problem that Abbasi identified. That problem, this idea of creating and enforcing a damages remedy is one that is final judgment. It's a yes or no question. Is there a Bivens remedy? The only thing that changes between now and an appeal from final judgment is that sure, Ms. Fitzgerald will be forced to stand trial and she'll be forced to testify to defend against the allegations that she intimidated Mr. Himmelreich out of using the prison grievance process. But your honors, I mean, I think there are two cases from the Supreme Court that are binding here. One is Will versus Halleck, which says those burdens of litigation are not enough to justify a collateral order review. The second is McCarthy versus Madigan, which of course the PLRA abrogated in some part, but there was one part at page 151 of McCarthy where the court hearkened back to prior opinions and said the fact that a prison official may be forced to stand trial does not unduly burden that prison official in a way that forecloses a Bivens remedy. I think that reasoning on the merits applies equally here in the jurisdictional context, whether you're considering it for jurisdictional purposes or for merits purposes. For the merits purposes, I think that's, I understood this argument needs to be the jurisdictional one, but on the merits, I think the argument, one of the many arguments could be that the PLRA has been what Congress thinks is the appropriate remedy and to allow Bivens action would be interfering with the role of Congress by the judiciary. And, and how do you respond to that? Sure, your honor, I think that's just respectfully flat wrong. I mean, I think if you look, as you pointed out in the brief, if you look at the landscape, the judiciary landscape leading up to 1996, when Congress enacted the PLRA, thousands of Bivens lawsuits have been filed, dozens of federal courts of appeals had recognized new Bivens causes of action that were different than the ones identified in cases like Bivens. And what we saw, what we see in the legislative history, and this court recognized this in LaVista versus Wheeler 20 years ago, that what we see in the legislative history was that the PLRA was Congress's intent to regulate Bivens actions. It wasn't Congress's intent to eliminate them sub salientio or in any way to cast doubt on them. And I think that's very, very clear in what Representative LoBiondo says in his floor statement, which is we recognize that there's been an influx of these cases. And the way we're going to tackle the problem is we're going to require exhaustion. So that will decrease the quantity of overall lawsuits. And that's going to increase the quality of the lawsuits. And so your honor, I think the PLRA is actually one of the strongest points in our favor, because that's a congressional enactment where we have Congress acting in this exact space in the Bivens context to say, to take one of two routes. They could have taken the route to either overrule Bivens and its progeny legislatively, or the route that it did take to say, here's how we're going to address procedurally these types of lawsuits in federal court. So I don't think that at all forecloses a Bivens remedy in any prisoner case, but especially in this case, your honor. Thank you. Thank you for your argument. Mr. Byron. Thank you, your honor. Just a few points. First on the jurisdictional question, the Bistrian, I think is a good example of this. The qualified immunity issue was present in several cases, but it wasn't critical to the court's resolution of the separate special factors issue. And I think it's significant that the Supreme court, my colleague emphasized that the Supreme court has a pendant jurisdiction doctrine. Significant that the court has never relied on that either expressly or even impliedly. And in fact, the only way it could have come in would be the creation of a new and different standard because the court has not relied on the Swint standard. And I think a good example of this is demonstrated in Johnson against Jones, where the court can address the concern about whether the fact issue distinction in that case could be manipulated. And of course they weren't worried about that because if the fact question were manipulated, a court would not exercise pendant appellate jurisdiction to reach that question. What about footnote four in the Wilkie case? Your opponent relied on that heavily. Absolutely, your honor. And we rely on it too, just to be clear because footnote four makes, demonstrates that the same reasoning applies to the recognition of the entire cause of action and that the definition of the element in Hartman supports the court's reaching the question about the special factors question, whether there's a Bivens remedy at all, whether a court should create a new damages remedy. Nothing in that footnote suggests that qualified immunity and the legal questions attended to it are critical to the court reaching those underlying antecedent questions. And again, we just don't think that the Supreme court would have sub cilentio created a new category of pendant appellate jurisdiction. And I'll just emphasize in Will v. Halleck, which the plaintiff relies on heavily, the concerns that the court identified there are simply not present with respect to the special factors analysis. And the court there, of course, said that the judgment bar didn't present the same concerns that warranted interlocutory appeals qualified immunity. But here, the separation of powers concerns, the Supreme court has repeatedly emphasized go to the burden on officials and the effect on government operations, just as the court emphasized the same concerns and qualified immunity. So the will analysis simply doesn't apply. Turning to the to the special factors question. It's important that I think that the plaintiff should not be allowed to diminish the special, the separation of powers concerns that the Abbasi court emphasized repeatedly. And remember, Abbasi really resets the analysis for special wasn't Abbasi a very different kind situation? Judge Moore, absolutely. And the special factors that were present there are not the same as the ones here. But what the court did there, it didn't create a new special factors analysis just for claims against the Attorney General and the FBI director rising out of national security. Instead, what the Supreme Court said is, looking back at the history of the court's Bivens jurisprudence, separation of powers is the critical determining factor in special factors analysis. That's a general rule that the court adopted and and require the courts of appeals to apply. So there's no question this is a new context. The remedy question here doesn't look just to individual circumstances, but to the general category of claims about whether there's a remedial framework generally. And that is not affected by whether under PLRA analysis, there's an effectively unavailable question for a particular plaintiff. Those are different inquiries. And finally, the special factors need to be considered as a whole, not just the PLRA. The separation of powers concern here isn't just about the PLRA itself, but about the entire history of congressional attention to the area of prison litigation and the fact that Congress has chosen not to create a damages remedy. That's significant in the special factors analysis, as the court in Abbasi made clear. And finally, if I may... Couldn't it be in part that Congress, when it has amended the PLRA, knew about the Bivens remedy and decided that they didn't need to legislate a damages remedy because there was already a Bivens remedy? Judge Moore, I don't think... So first of all, I think to some extent that's absolutely right. And let me say what I think the upshot of that is, though. As with the FTCA, where the Supreme Court has said that the FTCA left Bivens where it found it. I think it could be fair to say PLRA left Bivens where it found it, after all, for four decades now, is a strong presumption against the creation of new Bivens causes of action. And there's no question, I think, but that this First Amendment retaliation claim concerning assignment to the special housing unit is that kind of new context and kind of concedes as much. Can I just say a word about the fees question in closing? One minute, and do not overrun it. Thank you, Your Honor. The payment of fees by private counsel is a different question. If they choose to pay it, a different question than requiring the Justice Department representative, represented plaintiff to pay it. And if there's any uncertainty about the fee requirement in these circumstances, because after all, no court has held this or addressed this before, the proper remedy would be a prospective rulemaking effort to clarify and specify when the fees are required to be paid in Bivens cases. That's what happened in the Rule 4 context for the time limits. And that would be the appropriate resolution here if there were any questions. Thank you, Your Honor. May it please the Court, we request the Court reverse the order below. Thank you both for your argument. It was an excellent argument. And we especially appreciate Mr. Ibanaga's pro bono representation of his client. I think this is an example of the having excellent representation furthers the ends of justice. However, we resolve this case. So we thank you both for your argument. And the case will be submitted and you may, well, the clerk may adjourn court. How about that? This report is now adjourned.